COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

GIVENS BROTHERS, INC., et al., Appellees.

Court of Appeals of Kentucky.

June 25, 1965.

Rehearing Denied March 4, 1966.

Robert F. Matthews, Atty. Gen., Wm.
A. Lamkin, Jr., Asst. Atty. Gen., C. E. Skid-

more, Highway Department, Frankfort, for appellant.

Pollard White, Hopkinsville, William M. Deep, Henderson, for appellees.

HILL, Judge.

This proceeding to condemn a portion of appellees' town lot in Hopkinsville, Kentucky, for use in rerouting U.S. 41, where Virginia Street intersects with North Main Street, resulted in a verdict and judgment for appellees of $10,000 for land actually taken, and $1200 for temporary use of an additional tract during construction. The state only appeals.

Only two grounds are argued for reversal, (1) that the trial court erred in overruling its motion to strike certain evidence claimed incompetent, and (2) because of excessiveness of the amount allowed for temporary easement.

First, we detail the situation of appellees' property before and after the taking. Their lot was 90 x 108 before, with a concrete block service station, with upstairs living quarters, slightly north of the middle of the lot, with pumps in front and facing on North Main Street. The back of the lot and building was on Virginia Street. To the south of the lot, Riverside Drive joins Main Street and Virginia Street. Virginia Street runs into Main just north of appellees' property, so that this property was actually situated in a triangle with Riverside Drive as the base, and with Main and Virginia Streets as the sides, forming an apex near the intersections of Virginia and Main. Main Street run north and south and Virginia Street runs into Main from the southeast. Virginia Street is made a one-way thoroughfare for north bound traffic.

Two triangular tracts are taken, one with a base 14 feet wide and sides 90 feet long; the other, while not given in evidence or on the map, must have a base of about 30 feet and sides 70 feet, since it is shown 1730 square feet were taken, including both tracts.

In addition, two temporary easements were sought, one 20 x 90 on Riverside Drive, and the other 15 feet wide and extending a little over 100 feet along the east side of appellees' lot. The temporary use was for about one year.

The temporary easement is unusual in this case, in that, about 80% of it was used to make a fill and slope on the east side, including a retaining wall a part of the distance, which retaining wall is 9 feet high at one point and 4 feet 4 inches at another. This fill and sloping process were also used on the south next to Riverside Drive for nearly half the width of the lot. So, we must treat a large part of the temporary easement as actually a taking since appellees cannot use the land supporting the fill or the slope from the fill. The parking space to the south and east of the lot has been taken for all practical purposes.

Before the construction, traffic could drive all the way around the building. Not so now. The retaining wall is 1.8 feet from the building. We do not find the amount awarded for temporary easement excessive.

Now, to the evidence complained of. First, appellant complains that error was committed by the failure of the trial court to strike the testimony of Robert Givens because he arrived at values from prices he paid in other locations mostly in other counties. This, we do not believe was sufficient justification to strike his testimony. It was sufficient that he was familiar with other sales of property for like use in the general area, perhaps including several counties.

Next, objection is made to testimony of Raymond McKinney because he admitted on cross-examination, along with other factors, he considered the difference in rental value before and after the taking. Although he did not know such rental value, he had a "fairly good idea" about it. He

fixed the before value at $30,000 and the after value, $15,000. He fixed the rental value of the temporary easement at $100 per month, or a total of $1200, which figure the jury implicitly believed and adopted in its verdict. In speaking of the land used for temporary easement, this witness said: "Well, certainly, you had rather have a *bank like that* than to not have it. I would say it would be worth something but as far as business is concerned I see no benefit of it to any business you might establish on the property." This witness had been a wholesaler for Texaco since 1931. He was chairman of the board of directors of the the First City Bank & Trust Company and a member of its loan committee, and as such did appraisals. The diligent effort of counsel for appellant to get him to base his estimate of values on income, alone, failed when he said "very definitely the rental income and the sale value." We think the trial court was correct in overruling motion to strike the testimony of this witness.

■ Similar complaint is made to the testimony of Jewell Hill who gave no supporting factor to bolster the probative value of his estimates other than the fact appellees will no longer have sufficient parking space and that cars no longer can circulate around the service station. Appellant was not entitled to "strike" the testimony of this witness. The same situation exists as to the testimony of Vernon Lile, except that no objection was made to his testimony. He also took into account the rental value of the temporary easement and interruption of business. Interruption of business is an improper factor but it cannot be said such a reference by this witness alone was prejudicial to appellant. We think it was not. No claim is made that Mr. Lile was not an expert. He appeared to rely on comparable sales near the land in question.

■ Appellant finally complains that all of the evidence as to the fair rental value of the temporary easement should have been stricken because "(1) there was no valid basis for these opinions, and (2) each of the witnesses evidently was basing his opinion on the interruption of business during construction of the road." This broad assertion is refuted by the testimony of Mr. McKinney who unequivocally denied that he relied on the interruption of business to determine the rental value of the temporary easement. This argument is further refuted by the testimony of Jewell Hill who did not state that he relied on the interruption of business to determine the rental value of the temporary easement. Also, as noted above, the land involved in the temporary easement, in its present condition, is worthless to appellees and must be treated as a substantial taking.

■ In concluding this phase of the case, it may be said that there is no merit to appellant's contention that none of the witnesses had a valid basis for their estimates. Without enumerations it is sufficient to point out that all of the witnesses were apparently pretty well qualified to state their opinions of the rental value of the temporary easement. Their failure to elaborately outline the reasoning underlying these estimates merely affects the weight of their testimony.

The judgment is affirmed.

MONTGOMERY, J., dissents.

MONTGOMERY, Judge (dissenting).

The majority opinion is in error, in my belief, in holding that the motion to strike the testimony of Robert Givens, Raymond McKinney, and Jewell Hill was properly overruled. Each witness in part based his estimate of value on the rental value of the service station. The rental of the property was based on the amount of petroleum products, especially gasoline, sold each month.

As I recall the testimony, 1½¢ per gallon was paid as rental. The amount of petro-

leum products sold in a service station depends in large measure on the skill and personality of the operator, as distinguished from any characteristic or quality of the station property itself. Thus, the testimony of the three witnesses, in so far as they base their value estimates on the gasoline sales, was based on an "income-producing quality" unrelated to the property, which is an improper basis for assessing damages to the property by condemnation. This has been condemned. Commonwealth v. Smith, Ky., 358 S.W.2d 487; Commonwealth v. Eubank, Ky., 369 S.W.2d 15; Robinette v. Commonwealth, Ky., 380 S.W.2d 78.

Additionally, the testimony of McKinney should have been stricken because he undertook to base his value estimate on rental but at the same time admitted his lack of knowledge of the amount of rental. Both McKinney and Hill failed to support their value estimates with sufficient probative testimony.

Accordingly, I feel that the trial court erred to the prejudice of the appellant in failing to strike the testimony mentioned.